## THOMAS DALEY

*v.*

## SOMERS LUMBER COMPANY et al.

[Decided August 22d, 1905.]

Where a building contract, duly filed in the county clerk's office, provided for final payment on certificate of the architect, the owner is liable to parties furnishing labor and materials, who served notice prior to the issuance of the final certificate, to the full amount of their claims, not exceeding the full amount of such final payment.

On bill of interpleader, answer and proofs.

The complainant, the owner of a lot of land at the northwest corner of Baltic and Kentucky avenues, in Atlantic City, contracted with one Frank Muth that he (Muth) should furnish all the labor and materials for the erection and construction of a building described in a written contract and specifications.

The contract in the clause which deals with the contractor's right to payment in various contingencies declares that "the architect shall audit and issue a certificate, which shall be conclusive upon the parties, unless decided by arbitration," &c.

The total price was agreed to be $9,384, payable as follows: First payment, $1,000, when first-floor joists are set; second payment, $2,000, when roof is slated; third payment, $1,000, when house is lathed; "last payment of $5,384, upon architect's certificate."

The contract is dated September 23d, 1902, and, with its accompanying drawings and specifications, was filed in Atlantic county clerk's office on September 24th, 1902.

The complainant alleges that the building was commenced shortly after April 24th, 1902, and was completed April 24th, 1903; that he advanced to contractor Muth, on certificates of the architect, as follows:

| | |
|---|---|
| On December 1st, 1902 | $1,000 00 |
| On December 18th, 1902 | 2,000 00 |
| On January 7th, 1903 | 1,000 00 |
| On January 8th, 1903 | 1,000 00 |
| On February 4th, 1903 | 2,000 00 |
| On March 24th, 1903 | 1,500 00 |
| Total | $8,500 00 |

The architect, under date of July 14th, 1903, certified that the building was completed on or before April 21st, 1903.

The complainant alleges that Muth, the contractor, was therefore on April 21st, 1903, entitled to the balance due on the completion of the contract as well as to all preceding installments of the contract price; that he, the complainant, has in his hands of the contract price $884, less any credit to which the complainant may be entitled by reason of Contractor Muth's delay in finishing the building. This the complainant claims he is entitled to at the rate of $500 per day's delay, as provided for in the contract.

On December 24th, 1902, Daniel B. Ingersoll served on the complainant a stop notice, under the third section of the Mechanics' Lien act, claiming $381 for materials, &c.

On May 26th, 1903, Somers Lumber Company served such a stop notice, claiming $2,307.44 for labor performed and materials furnished, &c.

On August 20th, 1903, Michael H. Towbey served such a stop notice for $245.60.

The complainant further alleges that on January 8th, 1904, he served upon Contractor Muth written notice of these claims, and also, on January 12th, 1904, upon Muth's trustee in bankruptcy, who had then been appointed, &c.

The Somers Lumber Company commenced suit in Atlantic circuit court to recover the sum named in its stop notice.

Daniel B. Ingersoll demanded payment of his claim, and threatened suit.

The complainant avers that he does not collude with any of the said claimants, and that he is not indemnified by any of them, &c.

He prays that they may be restrained from suing him at law, and may be decreed to interplead and settle their right to the said sum of money, &c.

The Somers Lumber Company is the only defendant which files a litigating answer. That company's answer denies that the building in question was completed on the 21st day of April, 1903, and avers that it was not completed until some time in July of that year. It denies that the balance in the hands of the complainant is $884; avers that the complainant made a number of payments before the building was completed, and before the architect had certified that it was completed, according to the terms of the contract; that the sum so paid in advance of said certificate and said completion was in excess of $3,000, and that in fact and in law there is in complainant's hands over $5,000.

The cause was heard on these pleadings.

*Mr. Charles C. Babcock,* for the complainant.

*Mr. Clarence L. Cole,* for Somers Lumber Company, defendant.

GREY, V. C.

The phase of this case now under consideration presents only one question, and that is whether the complainant has shown himself to be entitled to a decree against the defendants which will compel them to interplead with each other to fix their claims upon the sum of $884, which the complainant alleges is all that remains in his hands of the contract price agreed to be paid for the construction of the building.

This is the bone of contention, the defendants insisting that the complainant has no right to compel them to interplead, because the sum he tenders, $884, is not the full portion of the contract price which is lawfully applicable to the payment of the stop-noticing claimants.

The complainant's *Exhibit C 12* is a notice from him to Muth, the contractor, of the stop notices which had been served on him (Daley). In this exhibit of the complainant he gives a list of those stop notices as follows:

"D. B. Ingersoll (material), notice served December
24th, 1902 ........................... $381 10
Somers Lumber Company (labor and materials),
notice served May 26th, 1903 ................. 2,307 44
Harry Madara (materials), notice served July 28th,
1903 ...................................... 53 50
W. H. Towbey (labor and materials), notice served
August 20th, 1903 ......................... 245 60"

The contract on file prescribes the last payment of $5,384 shall be made upon the architect's certificate. The complainant concedes that his advances to the contractor intrude upon this last payment of the contract price, and that they were made without any architect's certificate coincidentally or precedently given. In short, it is admitted that the complainant has paid $4,500 (part of the last payment of $5,384) without any architect's certificate whatever.

The complainant's contention is that he was authorized to make these advances because when he made them the building was in truth completed, although the architect had not yet certified to the fact; that he did certify to it several months after the payments had been made, and after the contesting defendants had served their stop notices upon the complainant.

The contract did not authorize the last payment to be made when the building was in fact completed. It expressly declared that the last payment of $5,384 was to be made upon the architect's certificate. There is a mention, in clause 4 of the contract, of payment when the building is completed, but that reference has nothing to do with the fixing of a time for payment of the

several installments of the contract price. This provision in clause 4 follows a prescription of the mode in which neglect or suspension of work on the part of the contractor may be rectified by employment of other parties to do it in his place, the expense so to be deducted from the contract price. Then the contract declares:

"In such an event the payments herein agreed upon shall not be due until the entire work shall be completed. Any balance due the contractor when the work is completed shall be paid to the contractor by the owner," &c.

This provision is not intended to fix a time when the last payment shall become due. That is fixed in definite terms in the fifth clause of the contract. All that is done by the quoted fourth clause is to provide a protection to the owner by which, if the contractor fails to perform, the owner may retain all payments until the work is completed.

The fifth section of the Mechanics' Lien act prohibits payments by the owner in advance of the terms of the filed contract. In *Slingerland* v. *Binns, 56 N. J. Eq. (11 Dick.) 413,* the court of errors and appeals declared that under this section the owner shall not in any way discharge his liability to pay under the contract, until according to the terms of the contract, the time to do so has arrived, in order that until that time such liability may be preserved for the benefit of workmen and materialmen who serve the statutory notices.

The complainant does not deny that he made advances without the certificate of the architect, which the contract required, but seeks to excuse them on the ground that an unreasonable or fraudulent refusal by the architect to certify might subject the contractor to great loss and the owner to delay and embarrassment. These are in this case purely hypothetical questions. There is no proof that the conduct of the architect was either unreasonable or fraudulent regarding the issuing of his certificate to justify the last payment of $5,384. If the owner was of opinion that the requirement of the architect's certificate might subject him to trouble, he might readily have protected himself

by so framing his contract that the last installment of the contract price should be payable when the building should be completed, without the provision for the architect's certificate. He did not do this. By the express terms of the filed contract, the last installment of the contract price, $5,384, was to be paid on the architect's certificate. Under section 5 of the statute, and the decision of *Slingerland* v. *Binns, ubi supra,* the parties furnishing labor and materials had a right to presume that the last payment would be made only when the architect's certificate had been given, as prescribed by the filed contract.

What happened was that on December 24th, 1902, the defendant Ingersoll served a stop notice on the complainant. The latter has since paid $5,500 of the contract price without paying Ingersoll. On May 26th, 1903, no architect's certificate had been given in relation to the last payment. On that day the Somers Lumber Company served its stop notice. Under the contract on file, and the law as declared in the above-cited case, this should have impounded, and did impound, the whole of the last payment of $5,384 for the payment of the claims of the noticing creditors. It makes no difference that the complainant, after the serving of the stop notice, and after he had made the advances to the contractor, obtained the architect's certificate. The rights of the parties were fixed as of the time of serving the stop notice on May 26th, 1903. The complainant-owner had at that time wrongfully paid out $4,500 on account of the last payment of $5,384, without having any architect's certificate to justify those payments, as required by the filed contract. The architect could not lawfully, in July, 1903, give a certificate of the completion of the building to relate back to the preceding April (as he tried to do), and thus wipe out the Somers Lumber Company's lien on the fund.

The case at bar is, in my view, controlled by the decision in *Slingerland* v. *Binns, ubi supra.*

The complainant has in his hands, or under the law, as declared in that case, is responsible, not for $884, as he claims in his bill, but in truth for the whole of the last payment, amounting to $5,384. This sum is more than sufficient to satisfy in

full all the claims of the stop-noticing defendants. There are therefore no conflicting claims which might require that the complainant be protected from double liability by an interpleader decree. He has, in contemplation of the law, enough of the contract price in hand to satisfy all the defendants' claims upon it. Under this condition of affairs he has no standing to maintain an interpleader bill against them.

The complainant's bill should be dismissed, with costs.